IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

**LAWNEE, D.[1]**,

        Plaintiff,

v.

**KILOLO KIJAKAZI,** Acting Commissioner of Social Security,

        Defendant.

Case No. 6:20-cv-354-SI

**OPINION AND ORDER**

Katherine L. Eitenmiller and Mark A. Manning, HARDER, WELLS, BARON & MANNING, PC, 474 Willamette Street, Eugene, OR 97401. Of Attorneys for Plaintiff.

Scott Erik Asphaug, Acting United States Attorney, and Renata Gowie, Assistant United States Attorney, UNITED STATES ATTORNEY'S OFFICE, 1000 SW Third Avenue, Suite 600, Portland, OR 97204; Ryan Lu, Special Assistant United States Attorney, OFFICE OF GENERAL COUNSEL, Social Security Administration, 701 Fifth Avenue, Suite 2900 M/S 221A, Seattle, WA 98104. Of Attorneys for Defendant.

**Michael H. Simon, District Judge.**

      Lawnee D. (Plaintiff) seeks judicial review of the final decision of the Commissioner of the Social Security Administration (Commissioner) denying Plaintiff's application for

---

[1] In the interest of privacy, this Opinion and Order uses only the first name and the initial of the last name of the non-governmental party in this case. When applicable, this Opinion and Order also uses the same designation for a non-governmental party's immediate family member.

Supplemental Security Income (SSI) under the Social Security Act (Act). Because the Commissioner's findings were not supported by substantial evidence, the Court reverses the Commissioner's decision and remands this case for further proceedings.

## STANDARD OF REVIEW

The district court must affirm the Commissioner's decision if it follows the proper legal standards and the findings are supported by substantial evidence. 42 U.S.C. § 405(g); *see also Hammock v. Bowen*, 879 F.2d 498, 501 (9th Cir. 1989). "Substantial evidence" means "more than a mere scintilla but less than a preponderance." *Bray v. Comm'r of Soc. Sec. Admin.*, 554 F.3d 1219, 1222 (9th Cir. 2009) (quoting *Andrews v. Shalala*, 53 F.3d 1035, 1039 (9th Cir. 1995)). It means "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id.* (quoting *Andrews*, 53 F.3d at 1039).

When the evidence is susceptible to more than one rational interpretation, the Court must uphold the Commissioner's conclusion. *Burch v. Barnhart*, 400 F.3d 676, 679 (9th Cir. 2005). Variable interpretations of the evidence are insignificant if the Commissioner's interpretation is a rational reading of the record, and this Court may not substitute its judgment for that of the Commissioner. *See Batson v. Comm'r of Soc. Sec. Admin.*, 359 F.3d 1190, 1193, 1196 (9th Cir. 2004). "[A] reviewing court must consider the entire record as a whole and may not affirm simply by isolating a specific quantum of supporting evidence." *Orn v. Astrue*, 495 F.3d 625, 630 (9th Cir. 2007) (quoting *Robbins v. Soc. Sec. Admin.*, 466 F.3d 880, 882 (9th Cir. 2006) (quotation marks omitted)). A reviewing court, however, may not affirm the Commissioner on a ground which the Commissioner did not rely. *Id.*; *see also Bray*, 554 F.3d at 1226.

## BACKGROUND

### A. Plaintiff's Application

Plaintiff applied for SSI August 9, 2016, alleging disability beginning January 1, 2010. AR 28. Plaintiff's claim was first denied on October 24, 2016 and again upon reconsideration January 31, 2017. AR 28. Plaintiff filed a written request for hearing before an Administrative Law Judge (ALJ). AR 28, 104. The ALJ held a hearing on July 2, 2018, at which Plaintiff amended her alleged disability onset date to the date of filing, August 9, 2016. AR 28, 45. Plaintiff was born June 20, 1964, and was 52 years old at the time of filing and amended alleged onset date. AR 155. In a decision dated October 24, 2018, the ALJ found Plaintiff was not disabled. AR 28-37. Plaintiff appealed the ALJ's decision to the Appeals Council, which denied Plaintiff's request for review on January 15, 2020, making the ALJ's decision final. AR 1-3.

### B. The Sequential Analysis

A claimant is disabled if he or she is unable to "engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which . . . has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). "Social Security Regulations set out a five-step sequential process for determining whether an applicant is disabled within the meaning of the Social Security Act." *Keyser v. Comm'r Soc. Sec. Admin.*, 648 F.3d 721, 724 (9th Cir. 2011); *see also* 20 C.F.R. §§ 404.1520 (DIB), 416.920 (SSI); *Bowen v. Yuckert*, 482 U.S. 137, 140 (1987). Each step is potentially dispositive. 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4). The five-step sequential process asks the following series of questions:

1. Is the claimant performing "substantial gainful activity?" 20 C.F.R. §§ 404.1520(a)(4)(i), 416.920(a)(4)(i). This activity is work involving significant mental or physical duties done or intended to be done for pay or profit. 20 C.F.R. §§ 404.1510, 416.910. If the claimant is performing such work, she is not disabled within the meaning of the Act. 20 C.F.R.

        §§ 404.1520(a)(4)(i), 416.920(a)(4)(i). If the claimant is not performing substantial gainful activity, the analysis proceeds to step two.

2. Is the claimant's impairment "severe" under the Commissioner's regulations? 20 C.F.R. §§ 404.1520(a)(4)(ii), 416.920(a)(4)(ii). An impairment or combination of impairments is "severe" if it significantly limits the claimant's physical or mental ability to do basic work activities. 20 C.F.R. §§ 404.1521(a), 416.921(a). Unless expected to result in death, this impairment must have lasted or be expected to last for a continuous period of at least 12 months. 20 C.F.R. §§ 404.1509, 416.909. If the claimant does not have a severe impairment, the analysis ends. 20 C.F.R. §§ 404.1520(a)(4)(ii), 416.920(a)(4)(ii). If the claimant has a severe impairment, the analysis proceeds to step three.

3. Does the claimant's severe impairment "meet or equal" one or more of the impairments listed in 20 C.F.R. Part 404, Subpart P, Appendix 1? If so, then the claimant is disabled. 20 C.F.R. §§ 404.1520(a)(4)(iii), 416.920(a)(4)(iii). If the impairment does not meet or equal one or more of the listed impairments, the analysis continues. At that point, the ALJ must evaluate medical and other relevant evidence to assess and determine the claimant's "residual functional capacity" (RFC). This is an assessment of work-related activities that the claimant may still perform on a regular and continuing basis, despite any limitations imposed by his or her impairments. 20 C.F.R. §§ 404.1520(e), 404.1545(b)-(c), 416.920(e), 416.945(b)-(c). After the ALJ determines the claimant's RFC, the analysis proceeds to step four.

4. Can the claimant perform his or her "past relevant work" with this RFC assessment? If so, then the claimant is not disabled. 20 C.F.R. §§ 404.1520(a)(4)(iv), 416.920(a)(4)(iv). If the claimant cannot perform his or her past relevant work, the analysis proceeds to step five.

5. Considering the claimant's RFC and age, education, and work experience, is the claimant able to make an adjustment to other work that exists in significant numbers in the national economy? If so, then the claimant is not disabled. 20 C.F.R. §§ 404.1520(a)(4)(v), 416.920(a)(4)(v), 404.1560(c), 416.960(c). If the claimant cannot perform such work, he or she is disabled. *Id.*

*See also Bustamante v. Massanari*, 262 F.3d 949, 954 (9th Cir. 2001).

The claimant bears the burden of proof at steps one through four. *Id.* at 953; *see also Tackett v. Apfel*, 180 F.3d 1094, 1098 (9th Cir. 1999); *Yuckert*, 482 U.S. at 140-41. The Commissioner bears the burden of proof at step five. *Tackett*, 180 F.3d at 1100. At step five, the Commissioner must show that the claimant can perform other work that exists in significant numbers in the national economy, "taking into consideration the claimant's residual functional capacity, age, education, and work experience." *Id.*; *see also* 20 C.F.R. §§ 404.1566, 416.966 (describing "work which exists in the national economy"). If the Commissioner fails to meet this burden, the claimant is disabled. 20 C.F.R. §§ 404.1520(a)(4)(v), 416.920(a)(4)(v). If, however, the Commissioner proves that the claimant can perform other work existing in significant numbers in the national economy, the claimant is not disabled. *Bustamante*, 262 F.3d at 953-54; *Tackett*, 180 F.3d at 1099.

### C. The ALJ's Decision

The ALJ performed the sequential analysis as noted above. At step one, the ALJ found that Plaintiff had not engaged in substantial gainful activity after her application and alleged onset date, August 9, 2016. AR 30. At step two, the ALJ found Plaintiff had severe impairments of diabetes mellitus type I with noncompliance, morbid obesity, congestive heart failure, status post stroke, depressive disorder, and anxiety disorder. AR 30. The ALJ found that those medically determinable impairments significantly limit Plaintiff's ability to perform basic work activities required by SSR 85-28. AR 30. At step three, the ALJ found that Plaintiff did not have an impairment or combination of impairments that met or equaled the severity of impairments required in 20 C.F.R. Part 404, Subpart P, Appendix 1 (20 C.F.R. §§ 416.920(d), 416.925 and 416.926). AR 31.

The ALJ next determined Plaintiff's RFC. The ALJ found Plaintiff to have an RFC to perform light work, which consists of lifting no more than twenty pounds at a time and frequent

lifting or carrying of objects of no more than ten pounds. AR 32; 20 CFR § 416.967(b). The ALJ included the following additional limitations: occasionally climb ladders, ropes, and scaffolds; occasionally stoop and kneel; frequently climb ramps or stairs, crouch, and crawl. AR 32. The ALJ also found Plaintiff limited to simple, routine, and repetitive tasks; and restricted Plaintiff to occasional contact with the general public. AR 32.

At step four, the ALJ concluded that Plaintiff could perform past relevant work as a cleaner housekeeper compatible with Plaintiff's RFC. AR 35. The ALJ made alternative findings at step five. Considering Plaintiff's age, education, work experience, and RFC the ALJ found Plaintiff able to make a successful adjustment to other work that exists in significant numbers in the national economy. AR 36. As a result, the ALJ found Plaintiff was not disabled under the Social Security Act. AR 37.

## DISCUSSION

Plaintiff argues that the ALJ erred in rejecting Plaintiff's testimony and rejecting the opinion of David Bertapelle, LCSW, one of Plaintiff's treating sources. Under Social Security regulations, Mr. Bertapelle is not considered an "acceptable medical source" but is instead an "other medical source" or "nonmedical source."

**A. Plaintiff's Subjective Symptom Testimony**

Plaintiff contends that the ALJ erred by failing to identify specific, clear, and convincing reasons supported by substantial evidence in the record to reject Plaintiff's subjective symptom testimony. There is a two-step process for evaluating a claimant's testimony about the severity and limiting effect of the claimant's symptoms. *Vasquez v. Astrue*, 572 F.3d 586, 591 (9th Cir. 2009). "First, the ALJ must determine whether the claimant has presented objective medical evidence of an underlying impairment 'which could reasonably be expected to produce the pain or other symptoms alleged.'" *Lingenfelter v. Astrue*, 504 F.3d 1028, 1036 (9th Cir. 2007)

(quoting *Bunnell v. Sullivan*, 947 F.2d 341, 344 (9th Cir. 1991) (en banc)). When doing so, "the claimant need not show that her impairment could reasonably be expected to cause the severity of the symptom she has alleged; she need only show that it could reasonably have caused some degree of the symptom." *Smolen v. Chater*, 80 F.3d 1273, 1282 (9th Cir. 1996).

"Second, if the claimant meets this first test, and there is no evidence of malingering, 'the ALJ can reject the claimant's testimony about the severity of her symptoms only by offering specific, clear and convincing reasons for doing so.'" *Lingenfelter*, 504 F.3d at 1036 (quoting *Smolen*, 80 F.3d at 1281). It is "not sufficient for the ALJ to make only general findings; he must state which pain testimony is not credible and what evidence suggests the complaints are not credible." *Dodrill v. Shalala*, 12 F.3d 915, 918 (9th Cir. 1993). Those reasons must be "sufficiently specific to permit the reviewing court to conclude that the ALJ did not arbitrarily discredit the claimant's testimony." *Orteza v. Shalala*, 50 F.3d 748, 750 (9th Cir. 1995) (citing *Bunnell*, 947 F.2d at 345-46).

In her function report dated October 10, 2016, Plaintiff reported that her limitations were due to symptoms of diabetes mellitus type I, status post stroke, depressive disorder, and anxiety disorder—among other impairments. Plaintiff stated she cares for her daughter by waking the daughter up for school, washing her clothes, and cooking dinner—which takes "forever" because Plaintiff cannot remember the instructions. AR 184-85. Plaintiff also stated that she bathes herself and cares for her own hygiene—also taking her "forever." AR 185. Plaintiff stated that she can dress herself but needs her daughter's help with shoes and socks, and that it takes Plaintiff days to do laundry and cleaning tasks. AR 185-86. Plaintiff, in her function report, stated she goes grocery shopping twice a month and can only go with a friend because otherwise she will not remember what to get, and that her friend also helps her say words. AR 186-87.

Plaintiff also stated she cannot pay attention for a long time and that she needs to read written instructions or hear oral instructions several times. AR 188.

At the hearing before the ALJ, Plaintiff testified consistently with her function report. Plaintiff stated that she can bathe and dress herself with her daughter's help putting on shoes and socks, that her daughter does almost all of the housework and helps Plaintiff cook meals, that she can load the dishwasher without help, and that she has a friend help her with grocery shopping. AR 51-52. Plaintiff described her typical day as waking up, having breakfast and talking to her daughter, bathing herself, staying in bed, and grocery shopping only if she must. AR 52.

The ALJ concluded that Plaintiff's medically determinable impairments could reasonably be expected to cause the alleged symptoms, satisfying step one of the framework. AR 33. In step two, the ALJ determined that Plaintiff's statements on the intensity, persistence, and limiting effects of her symptoms were "not entirely consistent with the medical evidence and other evidence in the record." AR 33. The ALJ identified three reasons for rejecting Plaintiff's subjective symptom testimony—that her limitations were inconsistent with her activities of daily living, that she was noncompliant with treatment recommendations, and that her claimed limitations were unsupported by the objective medical evidence. AR 34.

### 1. Daily Living Activities

Daily living activities may provide a basis for discounting subjective symptoms if the plaintiff's activities either contradict his or her testimony or meet the threshold for transferable work skills. *See Molina v. Astrue*, 674 F.3d 1104, 1112-13 (9th Cir. 2012); *Orn*, 495 F.3d at 639. For daily activities to discount subjective symptom testimony, the activities need not be equivalent to full-time work; it is sufficient that the plaintiff's activities "contradict claims of a totally debilitating impairment." *Molina*, 674 F.3d at 1113. A claimant, however, need not be utterly incapacitated to receive disability benefits, and completion of certain routine activities is insufficient to discount

subjective symptom testimony. *See id.* at 1112-13 (noting that a "claimant need not vegetate in a dark room in order to be eligible for benefits" (quotation marks omitted)); *Benecke v. Barnhart*, 379 F.3d 587, 594 (9th Cir. 2004) ("One does not need to be 'utterly incapacitated' in order to be disabled."); *Vertigan v. Halter*, 260 F.3d 1044, 1050 (9th Cir. 2001) ("This court has repeatedly asserted that the mere fact that a plaintiff has carried on certain daily activities, such as grocery shopping, driving a car, or limited walking for exercise, does not in any way detract from her credibility as to her overall disability. One does not need to be 'utterly incapacitated' in order to be disabled." (quoting *Fair v. Bowen*, 885 F.2d 597, 603 (9th Cir. 1989))); *Reddick v. Chater*, 157 F.3d 715, 722 (9th Cir. 1998) (requiring the level of activity be inconsistent with the plaintiff's claimed limitations to be relevant to his or her credibility and noting that "disability claimants should not be penalized for attempting to lead normal lives in the face of their limitations"). Moreover, particularly with certain conditions, cycles of improvement may be a common occurrence, and it is error for an ALJ to pick out a few isolated instances of improvement over several months or years and treat them as a basis for concluding that a plaintiff can work. *See Garrison v. Colvin*, 759 F.3d 995, 1017 (9th Cir. 2014).

The ALJ, in concluding that Plaintiff's activity level was inconsistent with the degree of restriction alleged, stated:

> She lives alone with her 15-year-old daughter. Although she alleged her daughter assisted her in household chores, the claimant still does household chores, such as preparing meals. In addition, she remains able to dress and bath[e], although her daughter helps with her shoes and socks. Yet, the claimant is the mother, performing a task of particular physical and mental challenges.

AR 34. Plaintiff testified that her daughter does almost all the household chores "except for . . . load[ing] the dishwasher" and that Plaintiff prepares meals with help from her daughter. AR 51-52. These limitations reflect what Plaintiff has alleged throughout the record. Plaintiff's ability to do minimal household chores, bathe, shower and partially dress herself, prepare simple meals, and grocery shop with the help of a friend are the types of activities the Ninth Circuit has

PAGE 9 – OPINION AND ORDER

repeatedly held do not support discounting subjective testimony. Thus, the ALJ erred by relying on Plaintiff's daily living activities as a clear and convincing reason to discount Plaintiff's subjective testimony.

### 2. Noncompliance

The ALJ also discounted Plaintiff's testimony because the ALJ found that Plaintiff was a "non-compliant diabetic" and "has been non-compliant with treatment in other ways." AR 34. To support this conclusion, the ALJ explained that at the hearing Plaintiff spoke about her failure to take diabetic shots before she ate, that Plaintiff could not remember her medication or if there were any side effects, and that Plaintiff was terminated from services "as she had canceled and rescheduled multiple times." *Id.* An ALJ may use unexplained or inadequately explained failure to follow a prescribed course of treatment to discount Plaintiff's subjective symptom testimony. *Smolen*, 80 F.3d at 1284; *see also Molina*, 674 F.3d at 1113-14 (noting that testimony may be discounted if "the individual is not following the treatment as prescribed and there are no good reasons for this failure" and that "a claimant's failure to assert a good reason for not seeking treatment, or a finding by the ALJ that the proffered reason is not believable, can cast doubt on the sincerity of the claimant's pain testimony" (simplified)).

Plaintiff stated at the hearing that she tries to follow her prescribed treatment plan but sometimes forgets to take her medication. AR 54. The record shows that Plaintiff was generally compliant with her medication. AR 1045, 1076, 1093. Dr. Patel suggested that Plaintiff was developing insulin resistance. AR 1045. Further, Plaintiff reported her memory issues to her providers, and her providers noted her memory impairments. *See, e.g.*, AR 73, 87, 1028, 1186, 1191. The ALJ did not consider Plaintiff's memory deficits as an explanation for her partial, or occasional, non-compliance. Instead, the ALJ found Plaintiff's admitted memory problems to be simply another basis for discounting Plaintiff's testimony, even though Plaintiff was candid

PAGE 10 – OPINION AND ORDER

about her memory issues. Indeed, the ALJ emphasized that Plaintiff "could not remember her medications and she did not know if she had any side effects from the medications." AR 34. Reports from Plaintiff's primary care physician reveal that Plaintiff was prescribed from 16 to 26 different medications at the same time. AR 1030-31, 1072-73, 1086-87, 1094-95. Merely because Plaintiff could not recite her various medications and their side effects when asked by the ALJ does not support that she is noncompliant in taking them. Further, the Ninth Circuit has remarked that "it is a questionable practice to chastise one with a mental impairment for the exercise of poor judgment in seeking rehabilitation" and that an ALJ should not discount claimants' testimony when "such departures from prescribed treatment [are] part of claimants' underlying mental afflictions." *Garrison*, 759 F.3d at 1018.

Lastly, the ALJ cited Plaintiff's termination from services at Coos Health and Wellness as a further sign of noncompliance. AR 34. The records supplied by Coos Health and Wellness are ambiguous at best. Plaintiff's initial intake was on October 11, 2016. AR 1024. Her treatment plan was to continue seeing her then-current counselor, David Bertapelle, and to follow up in three weeks. AR 1027. The termination chart note is dated May 15, 2017. AR 1003. It states that the purpose of Plaintiff's consultation with the clinic was for "medication management and limited case management" and the termination was because "[c]lient has canceled and rescheduled multiple times and is no longer on medications from this agency." AR 1003. It is unclear for which provider Plaintiff canceled appointments, particularly when her primary treatment plan was to continue seeing Mr. Bertapelle. The reason for termination also is unclear—it could have been because of the cancelations, the purpose for Plaintiff's consultation was no longer applicable (medication management), or a combination of the two.

PAGE 11 – OPINION AND ORDER

The termination note also stated that Plaintiff's primary care physician could refer Plaintiff back to the clinic, and it appears that Plaintiff did receive services through the clinic because the records sent from Coos Health and Wellness include some information from Coos County Mental Health and provider David Bertapelle dating after May 2017. *See* AR 1003-27. There are treatment records from Mr. Bertapelle from June 22, 2017, one month after the purported termination. *See, e.g.*, AR 1011, 1014-15. Mr. Bertapelle's continued treatment was reauthorized through a Coos Health and Wellness form dated December 2017. *See* AR 1012-13. Moreover, as of December 13, 2017, Mr. Bertapelle noted in Plaintiff's individual support plan that Plaintiff "regularly kept all scheduled appointments unless dealing with a medical issue or not having transportation," and that Plaintiff "has been very responsible for letting [Bertapelle] know when not able to make it to an appointment." AR 377. The ALJ did not discuss the ambiguity of the Coos Health and Wellness evidence, Plaintiff's recurrence of appointments, or Plaintiff's consistent treatment throughout the record. Cherry picking one chart note about Plaintiff canceling appointments is not a clear and convincing reason to discount Plaintiff's testimony.

### 3. Objective Medical Evidence

The ALJ's decision summarized the record, including Plaintiff's testimony at trial and multiple citations to the record. The ALJ then discounted Plaintiff's testimony with general statements that "the claimant's statements concerning the intensity, persistence and limiting effect of these symptoms are not entirely consistent with the medical evidence and other evidence in the record" and "the evidentiary record does not support the degree of restriction alleged by the claimant," AR 33-34. The Commissioner characterizes this reason by the ALJ as stating that the objective medical evidence was "inconsistent" with Plaintiff's testimony. The Commissioner and the ALJ, however, merely cite to objective medical evidence that purported to

PAGE 12 – OPINION AND ORDER

show normal test results or normal findings when Plaintiff claims debilitating symptoms. This is an assertion that the objective evidence does not support Plaintiff's claimed limitations, not that the objective evidence is "inconsistent" with Plaintiff's claimed limitations. Indeed, some reports confirmed both Plaintiff's left side numbness and also noted that Plaintiff's gait and station were "normal." *See, e.g.*, AR 1033, 1049, 1060, 1080.

A lack of support in the objective medical evidence cannot, by itself, support rejecting a plaintiff's subjective symptom testimony. *Robbins*, 466 F.3d at 883; *see also* 20 C.F.R. § 404.1529(c)(2) (noting that the Commissioner "will not reject your statements about the intensity and persistence of your pain or other symptoms or about the effect your symptoms have on your ability to work solely because the available objective medical evidence does not substantiate your statements"). Because the Court has rejected the other reasons given by the ALJ, this reason cannot, by itself, support the ALJ's conclusion discounting Plaintiff's testimony.

Further, for the ALJ's findings relating to Plaintiff's mental health issues,

> it is error to reject a claimant's testimony merely because symptoms wax and wane in the course of treatment. Cycles of improvement and debilitating symptoms are a common occurrence, and in such circumstances[,] it is error for an ALJ to pick out a few isolated instances of improvement over a period of months or years and to treat them as a basis for concluding a claimant is capable of working.

*Garrison*, 759 F.3d at 1017. Doctor reports of Plaintiff's mood as "normal" during a medical visit do not discount a plaintiff's testimony of mental symptoms when the ALJ finds the plaintiff to have mental impairments that could cause those symptoms to some degree. *See Smolen*, 80 F.3d 1282. Additionally, throughout the record Plaintiff's primary care physician documented depression as part of "active problems," including reports listing Plaintiff's mood and affect as "normal." AR 1085-88, 1094-97. Although the ALJ provided detailed summaries of the record,

PAGE 13 – OPINION AND ORDER

Plaintiff's impairments found in step two of the sequential analysis, and Plaintiff's testimony, the ALJ did not identify any specific conflicts with Plaintiff's subjective symptom testimony and the record. Thus, the ALJ erred by failing to identify specific, clear, and convincing reasons supported by the objective medical evidence to reject Plaintiff's subjective symptom testimony.

**B.  Opinion of David Bertapelle, LCSW**

Effective March 27, 2017, the Social Security Administration amended its regulations and Social Security Rulings (SSRs) relating to the evaluation of medical evidence, including the consideration of "acceptable medical sources" and "non-acceptable medical sources" or "other medical sources."[2] Most of these changes were effective only for claims filed after March 27, 2017. The Administration, however, implemented revised versions of 20 C.F.R. §§ 404.1527(f) and 416.927(f) to provide "clear and comprehensive guidance" about how to consider "other" medical sources for claims filed before March 27, 2017. *Revisions to Rules Regarding the Evaluation of Medical Evidence*, 82 Fed. Reg. 5844 (Jan. 18, 2017). Because Plaintiff's claim was filed before March 27, 2017, and the ALJ issued her opinion after March 27, 2017, the revised version of § 416.927 governs Plaintiff's claim.

This revised regulation incorporates the policy in SSR 06-03p of separating acceptable medical sources (licensed physicians and certain other qualified specialists) from "other" medical sources, and generally giving less deference to "other" medical sources. It also incorporates the policies of requiring the ALJ to consider "other" medical source opinions,

---

[2] Among things, the Commissioner rescinded SSR 06-03p, broadened the definition of acceptable medical sources to include Advanced Practice Registered Nurses (such as nurse practitioners), audiologists, and physician assistants for impairments within their licensed scope of practice, and clarified that all medical sources, not just acceptable medical sources, can provide evidence that will be considered medical opinions. *See* 20 C.F.R. §§ 404.1502, 416.902; 82 F. Reg. 8544; 82 F. Reg. 15263.

explain the weight given to such opinions, provide sufficient analysis to allow a subsequent reviewer to follow the ALJ's reasoning, and to provide sufficient detail and explanation if the ALJ gives greater weight to an opinion from an "other" medical source than a medical opinion from a treating source. *Revisions to Rules Regarding the Evaluation of Medical Evidence*, 82 Fed. Reg. 5844, 5845; *see also* 20 C.F.R. § 416.927(f). Because Mr. Bertapelle is a licensed social worker, he is considered an "other" medical source.

The Commissioner established that the same factors that apply to medical sources apply to other medical sources, although not every factor applies to every case because the evaluation is case specific. "Those factors include the length of the treatment relationship and the frequency of examination, the nature and extent of the treatment relationship, supportability, consistency with the record, and specialization of the doctor." *Revels v. Berryhill*, 874 F.3d 648, 655 (9th Cir. 2017) (citing 20 C.F.R. § 404.1527(c)(2)-(6)). The Commissioner also stated that "an opinion from a medical source who is not an acceptable medical source or from a nonmedical source may outweigh the medical opinion of an acceptable medical source, including the medical opinion of a treating source." 20 C.F.R. § 404.927(f); *see also Revels*, 874 F.3d at 655. Reasons given by way of example include when the other medical source has seen the claimant more often, has provided better supporting evidence and explanation in the opinion, and when the opinion is more consistent with the evidence as a whole. To discount a source who is not an acceptable medical source, the ALJ must provide germane reasons for doing so. *Popa v. Berryhill*, 872 F.3d 901, 906 (9th Cir. 2017); *Molina,* 674 F.3d 1111.

The ALJ gave great weight to the opinions of Sharon Eder, M.D., William Nisbet, M.D., Bill Hennings, Ph.D., and Susan South, Psy.D., all of whom were nonexamining medical sources. The ALJ gave the opinion of Plaintiff's treating therapist, David Bertapelle, little weight

PAGE 15 – OPINION AND ORDER

because he is a licensed clinical social worker, his opinion was issued through a form with short answer prompts and check-boxes, and he "did not provide objective medical findings to support his conclusion." AR 35. As a licensed clinical social worker, Bertapelle has a "specialized practice focused on assessment, diagnosis, and treatment of mental illness, emotional, and other behavioral disturbances." *Clinical Social Work*, Nat'l Ass'n of Social Workers, https://www.socialworkers.org/Practice/Clinical-Social-Work (last visited June 15, 2021). Bertapelle is an "other medical source." The ALJ may not discount Bertapelle's opinion simply because he is an other medical source. Indeed, the regulations require the ALJ to consider Bertapelle's opinion, and evaluate the same factors as with medical source opinions that may apply. The regulations also expressly acknowledge that an other medical source opinion may be given greater weight than a physician's opinion. 20 C.F.R. § 404.927(f). Thus, this reason is not a germane reason.

The ALJ also gave little weight to Bertapelle's opinion because "Mr. Bertapelle did not provide objective medical findings to support his conclusions." AR 35. In addition to the form detailing Plaintiff's limitations, however, there is objective medical evidence supporting Bertapelle's opinion. Bertapelle first treated Plaintiff on August 6, 2015, and continued to treat her multiple times a month thereafter throughout the relevant time. AR 179, 350. The record contains years of Bertapelle's session reports and evaluations as evidence to support his conclusions. *See Garrison*, 759 F.3d at 1014 n.17 (rejecting that an ALJ can discount a check-box opinion as unsupported by evidence because "[t]he check-box forms did not stand alone: they reflected and were entirely consistent with the hundreds of pages of treatment notes created by [the providers] in the course of their relationship with [the claimant]"). Bertapelle's session reports note Plaintiff's "chronic pain and numbness since her second stroke," that her "memory

is very poor," and that she is experiencing "memory difficulty." AR 1004, 1017, 1020. The record is unclear whether Bertapelle's conclusions are based more from clinical observation or Plaintiff's self-reports, but because the ALJ improperly discounted Plaintiff's testimony, the basis of Bertapelle's reports is valid under either circumstance. *See Ghanim v. Colvin*, 763 F.3d 1154, 1162 (9th Cir. 2014). Bertapelle's session reports are consistent with his opinion and the record as a whole. Thus, lack of objective medical findings also is not a germane reason.

Lastly, the ALJ's decision gives little weight to Bertapelle's opinion because it was through a standard form with "short phrases" and "checkmark[] answers." AR 35. "Simply put, the fact [that Bertapelle], an "other source," provided information in a check-box form provides no reason to reject h[is] opinion[], much less a germane reason." *Popa*, 872 F.3d at 907. The ALJ's decision is correct that Bertapelle gave his opinion through short answers and check boxes. That alone, however, is not germane reason to discount Bertapelle's opinion.

His opinion included two "extreme" limitations and one "marked" limitation to Plaintiff's mental RFC. AR 1187-88. Bertapelle's opinion is supported by the opinions of Bill Hennings, Ph.D., and Susan South, Psy.D., in which they reported Plaintiff being limited to "simple, routine tasks of 1-2 steps" because of Plaintiff's impaired concentration. AR 69, 83. This limitation is not included in Plaintiff's RFC by the ALJ. AR 32. Bertapelle provided the sole treating source opinion and, although he is not an acceptable medical source, the length of the treatment relationship and frequency of examination, the nature of the relationship, and the specialization of Bertapelle all support that his opinion warranted more than little weight; especially considering the only other opinions given weight were from nonexamining physicians. *See Revels*, 874 F.3d 655. The ALJ erred by failing to give germane reasons supported by substantial

evidence for giving Bertapelle's treating source opinion little weight, while giving great weight solely to nonexamining physicians, and this error was not harmless.

**C. Remand**

Within the Court's discretion under 42 U.S.C. § 405(g) is the "decision whether to remand for further proceedings or for an award of benefits." *Holohan*, 246 F.3d at 1210 (citation omitted). Although a court should generally remand to the agency for additional investigation or explanation, a court has discretion to remand for immediate payment of benefits. *Treichler v. Comm'r of Soc. Sec. Admin.*, 775 F.3d 1090, 1099-1100 (9th Cir. 2014). The issue turns on the utility of further proceedings. A court may not award benefits punitively and must conduct a "credit-as-true" analysis on evidence that has been improperly rejected by the ALJ to determine if a claimant is disabled under the Social Security Act. *Strauss v. Comm'r of the Soc. Sec. Admin.*, 635 F.3d 1135, 1138 (9th Cir. 2011).

In the Ninth Circuit, the "credit-as-true" doctrine is "settled" and binding on this Court. *Garrison v. Colvin*, 759 F.3d 995, 999 (9th Cir. 2014). The court first determines whether the ALJ made a legal error and then reviews the record as a whole to determine whether the record is fully developed, the record is free from conflicts and ambiguities, and there is any useful purpose in further proceedings. *Dominguez v. Colvin*, 808 F.3d 403, 407 (9th Cir. 2015). Only if the record has been fully developed and there are no outstanding issues left to be resolved does the district court consider whether the ALJ would be required to find the claimant disabled on remand if the improperly discredited evidence were credited as true. *Id.* If so, the district court can exercise its discretion to remand for an award of benefits. *Id.* The district court retains flexibility, however, and is not required to credit statements as true merely because the ALJ made a legal error. *Id.* at 408.

The ALJ committed reversible errors in assessing Plaintiff's subjective symptom testimony and David Bertapelle's treating source opinion. The Court, however, does not find that the record is fully developed and free from all conflicts and ambiguities. Thus, remand for further proceedings is appropriate.

## CONCLUSION

The Commissioner's decision that Plaintiff was not disabled is REVERSED AND REMANDED for further proceedings consistent with this Opinion and Order.

**IT IS SO ORDERED**.

DATED this 26th day of July, 2021.

/s/ *Michael H. Simon*
Michael H. Simon
United States District Judge